UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No.  2:25-cv-07893-JLS-BFM                              Date: September 03, 2025
Title:  Nadar Nadari v. Pamela Bondi et al

Present: **Honorable JOSEPHINE L. STATON, UNITED STATES DISTRICT JUDGE**

| Kelly Davis | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendant: |
|---|---|
| Not Present | Not Present |

**PROCEEDINGS:** (IN CHAMBERS)  **AMENDED ORDER (1) GRANTING IN PART EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER (Doc. 3); AND (2) ORDERING DEFENDANTS TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

Before the Court is an *Ex Parte* Application for Temporary Restraining Order filed by Petitioner Nadar Nadari.  (App., Doc. 3; Mem., Doc. 3-1.)  Respondents Pamela Bondi, Kristi Noem, U.S. Department of Homeland Security, and Ernesto Santacruz, Jr. opposed, and Petitioner replied.  (Opp., Doc. 4; Reply, Doc.6.)  Having reviewed the papers, the Court GRANTS IN PART Nadari's Application for Temporary Restraining Order and ORDERS Respondents to show cause why a preliminary injunction should not issue.

I. **BACKGROUND**

Nadari is a citizen of Iran who is currently detained by Immigrations and Customs Enforcement ("ICE") in Los Angeles, California.  (Petition ¶ 15, Doc. 1; *see also* Ex. D to Damast Decl., Doc. 1-6.)  He is married to a U.S. citizen and has two U.S. citizen children.  (Petition ¶¶ 14–15.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-07893-JLS-BFM                                     Date: September 03, 2025
Title:  Nadar Nadari v. Pamela Bondi et al

      Nadari entered the United States on June 30, 1994.  (*Id.* ¶ 2.)  On August 23, 1996, Nadari was ordered deported to Iran.  (Ex. A to Damast Decl., Order of Supervision, Doc. 1-3.)[1]  Following that deportation order, Nadari sustained several criminal convictions. (Petition ¶¶ 3-5.)  He was detained by ICE for the first time in 2002 and held in immigration detention for approximately 18 months.  (Petition ¶ 5.)  Nadari was released from ICE detention pursuant to an Order of Supervision on June 6, 2003, as his removal to Iran could not be effectuated.  (*Id.* ¶¶ 6, 11–12, 29.)  The Order of Supervision requires Nadari to comply with various conditions of release, including reporting to ICE on an annual basis.  (Petition ¶ 6; *see also* Order of Supervision.)

      On August 19, 2025, ICE re-detained Nadari in Santa Ana, California.  (Petition ¶ 7.)  Nadari was not provided notice of ICE's intent to re-detain him, nor any information as to why his Order of Supervision was presumably revoked "without evidence that he can be repatriated to Iran or deported to any other country."  (*Id.* ¶ 30; *see also id.* ¶ 9.)  Upon detaining Nadari, an ICE Officer "informed [Nadari's] attorney, Rocio La Rosa, that pursuant to a new ICE policy, people subject to final removal orders would be deported to third countries when removal could not be effectuated to their home country."  (*Id.* ¶ 8; *see also* La Rosa Decl. ¶ 3, Doc. 1-4.)  When La Rosa inquired as to which country Nadari would be removed to, the ICE Officer stated that an officer assigned to Nadari's case at a detention facility would make that determination.  (Petition ¶ 8; *see also* La Rosa Decl. ¶ 4.)  A DHS memorandum dated March 30, 2025 confirms that DHS has a policy of removing noncitizens to third countries "without the need for further procedures" when the United States has received diplomatic assurances that the noncitizen will not be persecuted or tortured.  (Ex. E to Damast Decl., March 2025 Noem Memo, Doc. 1-7.)  In the absence of such assurances, ICE "will not affirmatively ask whether the [noncitizen] is afraid of being removed to that country."  (*Id.*)

---

[1] Though Nadari's Petition and Application assert that he was ordered deported on or about November 8, 1999, (Petition ¶ 4; Mem. at 3), the Order of Supervision indicates that he was ordered deported on August 23, 1996.  (Order of Supervision.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-07893-JLS-BFM                                    Date: September 03, 2025
Title:  Nadar Nadari v. Pamela Bondi et al

On August 21, 2025, Nadari filed a petition for writ of habeas corpus.  (Petition ¶ 8.)  Nadari filed the instant *Ex Parte* Application on August 25, 2025.  (App.; Mem.)  The case was initially assigned to another judicial officer before being transferred to this Court on August 29, 2025.  (Order re Transfer, Doc. 7.)  Nadari's Application requests "an order barring Respondents from transferring him out of this judicial district or removing him to a third country without notice and an opportunity to be heard on any fear of persecution or torture he has in that third country."  (App. at 2.)

## II.     LEGAL STANDARD

"The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction."  *Lockheed Missile & Space Co. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995).  Like a preliminary injunction, a temporary restraining order is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  "The underlying purpose of a TRO is to preserve the status quo and prevent irreparable harm before a preliminary injunction hearing may be held."  *Jones v. H.S.B.C. (USA)*, 844 F. Supp. 2d 1099, 1100 (S.D. Cal. 2012) (citing *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty.*, 415 U.S. 423, 439 (1974)).

To obtain a temporary restraining order ("TRO"), a plaintiff "must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that [a TRO] is in the public interest."  *Winter*, 555 U.S. at 22.  This "requires the plaintiff to make a showing on all four prongs."  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).  Alternatively, under the Ninth Circuit's sliding scale test, a plaintiff may obtain a TRO by showing "that there are 'serious questions going to the merits'" and that "the 'balance of hardships tips sharply in the plaintiff's favor,' and the other two *Winter* factors are satisfied."  *Shell Offshore, Inc. v. Greenpeace,*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 2:25-cv-07893-JLS-BFM | Date: September 03, 2025 |
| Title: Nadar Nadari v. Pamela Bondi et al | |

*Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *Alliance for the Wild Rockies*, 632 F.3d at 1135) (emphasis omitted). The final two *Winter* factors "merge" when a TRO is sought against the government. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

### III. ANALYSIS

As noted above, Nadari seeks a TRO "barring Respondents from transferring him out of this judicial district or removing him to a third country without notice and an opportunity to be heard on any fear of persecution or torture he has in that third country." (App. at 2.) Below, the Court analyzes the *Winter* factors to determine if Petitioner is entitled to such relief.

First, the Court determines that Nadari has failed to show that he will suffer irreparable harm if he is transferred outside of this judicial district as this Court's jurisdiction "attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petitioner and the accompanying custodial change." *Francis v. Rison*, 894 F.2d 353, 354 (9th Cir. 1990); *see also Vaskanyan v. Janecka*, 2025 WL 2014208, at *8 (C.D. Cal. June 25, 2025). This conclusion accords with those of other courts that have retained jurisdiction over a habeas petition after a detainee's transfer out of the district. *See, e.g.*, *Ovsepian v. Bondi*, Case No. 5:25-cv-01937-MEMF-DFM, Doc. 20 at *14–15 (C.D. Cal. Aug. 8, 2025) (finding that habeas petitioner detained by ICE had "not shown that he [was] likely to suffer irreparable harm from his transfer to Louisiana"). Moreover, though Nadari argues that his transfer outside this judicial district will interfere with his access to counsel, he proffers only the fact that his counsel is based in Los Angeles, California to support this contention. (*See* Mem. at 12.) Such conclusory assertions do not suffice. Absent more, Nadari fails to show that his transfer out of district is likely to cause him irreparable harm. Without a showing of irreparable harm, the Court need not further examine the other *Winter* factors as to this claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-07893-JLS-BFM　　　　　　　　　　　Date: September 03, 2025
Title:  Nadar Nadari v. Pamela Bondi et al

In contrast, Nadari can point to irreparable harm if he is removed to a third country without notice and an opportunity to be heard as to any fear-based claim. Indeed, such harm—being removed to a country where one may be tortured— is patently obvious and not truly disputed by Respondents. *See D.V.D. v. U.S. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355, 391 (D. Mass. 2025) ("Here, the threatened harm is clear and simple: persecution, torture, and death. It is hard to imagine harm more irreparable."), *stayed pending appeal*, 145 S. Ct. 2153 (2025). As Nadari points out, if he "is removed unlawfully and without notice, he may never be returned." (Mem. at 13.)

So the Court turns to likelihood of success on the merits as to the fifth cause of action in Nadari's Petition, namely, that his removal to a third country without notice and an opportunity to be heard would be unlawful. Citing 8 U.S.C. § 1231(b)(3)(A), Petitioner argues that "DHS is barred from removing a non-citizen to a country where the non-citizen's life or freedom would be threatened because of five protected grounds." (Petition ¶ 27.) Further, he argues "DHS is barred from deporting a non-citizen to a country where they face a threat of torture. *See* 8 C.F.R. §§ 208.16-208.18."[2] (*Id.*)

Respondents do not contend that such a claim would not succeed on the merits. Rather, they argue that the risk of Nadari's third country removal "is speculative," and

---

[2] Nadari frames any violation as simply "unlawful." (Petition at 12; Mem. at 13.) In more specific terms, removals of noncitizens may violate procedural due process "if an immigrant was not provided an opportunity to address his fear of persecution in that country." *Najjar v. Lynch*, 630 F. App'x 724 (9th Cir. 2016). DHS's current policies allow removal "without the need for further procedures" when the United States has received "diplomatic assurances that [noncitizens] removed from the United States will not be persecuted or tortured." (March 2025 Noem Memo.) But even in the presence of diplomatic assurances, such a removal may still result in an "erroneous deprivation," especially because threats of harm or persecution to a noncitizen in a third country may be outside that country's government's control. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Removal without notice and an opportunity to be heard therefore raises serious due process issues. *See Ortega v. Kaiser*, 2025 WL 2243616, at *5 (N.D. Cal. Aug. 6, 2025); *see also Nguyen v. Scott*, 2025 WL 2419288, at *19 (W.D. Wash. Aug. 21, 2025).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-07893-JLS-BFM                                         Date: September 03, 2025
Title:  Nadar Nadari v. Pamela Bondi et al

improperly seeks to "prospectively enjoin the government to follow the law[.]"  (Opp. at 7.)  However, ICE's own policy belies these assertions.  Nadari proffers the statements of an ICE officer and ICE's own policy as evidence that his removal to a third country is not hypothetical.  (*See* March 2025 Noem Memo; La Rosa Decl. ¶ 3.)  Under ICE's policy, a noncitizen may be removed from the United States absent further procedure so long as "the country of removal . . . has provided diplomatic assurances that [noncitizens] removed from the United States will not be persecuted or tortured."  (March 2025 Noem Memo.)  ICE "will not affirmatively ask whether the [noncitizen] is afraid of being removed to that country."  (*Id.*)  Accordingly, the Court concludes that Nadari has established a likelihood of success on the merits, or at least the presence of "serious questions going to the merits" as to this claim.  *Alliance for the Wild Rockies*, 632 F.3d at 1135.

As mentioned above, the final two *Winter* factors merge when the opposing party is the government.  *See Nken*, 556 U.S. at 435.  "A plaintiff's likelihood of success on the merits of a constitutional claim also tips the merged third and fourth factors decisively in his favor."  *Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023).  This is because "it is always in the public interest to prevent the violation of a party's constitutional rights" and "[t]he government [] cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations."  *Id.* (quotation and citations omitted).

Here, Nadari has satisfied the first *Winter* factor, likelihood of success, and thus the balance of equities and public interest tip "decisively" in his favor.  *See Baird*, 81 F.4th at 1042.  Comparatively, any potential harm to Respondents is minimal; indeed, they identify no potential harm in their opposition to Nadari's Application and instead point to the public interest in enforcement of U.S. immigration law.  (*See* Opp. at 8.)  While the public has an interest in the efficient execution of this country's immigration laws, it also has a "an interest in preventing [noncitizens] from being wrongfully removed, particularly to countries where they are likely to face substantial harm."  *Nken*,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-07893-JLS-BFM                              Date: September 03, 2025
Title:  Nadar Nadari v. Pamela Bondi et al

556 U.S. at 436; *see also Ovsepian*, Case No. 5:25-cv-01937-MEMF-DFM, at *14–15 ("Although there is a countervailing 'public interest in prompt execution of removal orders,' it is well-established that 'our system does not permit agencies to act unlawfully even in pursuit of desirable ends[.]'") (quoting *Nken*, 556 U.S. at 436, and *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758, 766 (2021) (cleaned up, further citation omitted)).  Considering these interests, the Court determines that the balance of hardships tip sharply in favor of granting a TRO.  *See Ovespian*, No. 5:25-cv-01937-MEMF-DFM, at *15 (similar); *Vaskanyan*, 2025 WL 2014208, at *7 (C.D. Cal. June 25, 2025) (similar).

In sum, Nadari has sufficiently shown that there are serious questions going to the merits of his claim, that the balance of hardships tip "sharply" in his favor, and that the other two *Winter* factors are satisfied.  *Alliance for the Wild Rockies*, 632 F.3d at 1135.

Pursuant to Rule 65, a court "may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).  A district court has "discretion as to the amount of security required, *if any*."  *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (quoting *Barahona–Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999)) (emphasis in original, further citation omitted).  A court "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct."  *Id*.  Respondents make no argument that a security should be required or that they are likely to suffer harm if their conduct is enjoined.  In any case, there is minimal-to-no risk of harm to the government when it is enjoined from constitutional violations.  *See Baird*, 81 F.4th at 1042.  For these reasons, the Court concludes that no security is required.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-07893-JLS-BFM                              Date: September 03, 2025
Title:  Nadar Nadari v. Pamela Bondi et al

### IV. CONCLUSION

For the above reasons, the Court GRANTS in part Nadari's Application for Temporary Restraining Order.  Respondents are ENJOINED AND RESTRAINED from removing Nadari to a third country without proper notice and opportunity to be heard during the pendency of his habeas proceedings.  This Order shall remain in effect until **September 12, 2025**, unless the Court extends this period, before that date, and for good cause.  Fed. R. Civ. P. 65(b)(2).  Respondents are further ORDERED TO SHOW CAUSE in-person on **September 9, 2025** why a preliminary injunction should not issue.[3]  A hearing will be held on **Tuesday**, September 9, 2025, at 2:00 p.m. via Zoom Webinar.  Guidelines for Zoom Courtroom Proceedings are available on the Court's website.

Initials of Deputy Clerk: kd

---

[3] The parties may seek to extend these deadlines by stipulation.